Morning, Your Honors. I'm John Fuchs, and I'm here representing my law firm in an effort to collect on a $375,000 judgment that was entered not against the debtor, but against the debtor's ex-husband in 2009. I'd like to reserve a minute or two for rebuttal. There's an old adage in the law that if the lower courts were always correct, there wouldn't be any need for appellate courts. And the reason we're here is because we contend that both of the lower courts simply got it wrong. They either missed the issue or erroneously decided the issue. And the reason I say that, and I point out that this is what I call a agree on the issue. At page 7 of our brief, we pointed out the issue is not the validity of the judgment, but, quote, whether Fuchs & Associates, Inc. or Lesso is the proper judgment creditor. In the trustee's brief at page 23, the trustee points out, quote, it is not the existence of a judgment that is in question here. It is the identity of a judgment. The judgment was entered in 2009 for $375,000 as an award of legal fees under Family Code 20, er, 2030 and 2032. That judgment was never appealed. It is valid and final, and the bankruptcy court did not have authority or jurisdiction to invalidate that judgment because of Rooker-Feldman federalism and comedy. So that judgment is valid. The question then is, who is the proper judgment creditor? What do we do with the superior court? What's the effect of the superior court order of October 14, 2010? It said the motion by Fuchs & Associates for an order assigning to the movement all of Respondent Yotar Andrzejewski's rights to rent payments from community income, er, from the community-owned properties for the total amount of $375,000 came on for hearing, and then the concluding sentence having cited Article 699.710 of the CCP and the fact that F&AI is not a bona fide judgment creditor and F&AI Fuchs is not entitled to a writ of execution for $375,000 against Andrzejewski, the court denied the motion filed by Fuchs. What do we do with that? That's what the bankruptcy court relied on to say that you didn't have any. I understand that, and there are several problems with that order. The first problem with that order is it was simply a motion for assignment of rents from the properties. You're saying the order is wrong? Yes. Or the bankruptcy judge got it wrong? Both. The order is wrong, and the words that are left out in all of the analysis in all of the courts that was in the oral argument is when the judge said, at this juncture, the court does not believe the moving party should be considered a judgment creditor for purposes of obtaining attorney's fees incurred by petitioner while the case is still pending. That was 2010. The marital dissolution case was still pending. The question of the entitlement to legal fees was going to be determined at the end of the case. The problem then arose is that Ms. Lessow filed bankruptcy, and everything shifted to the bankruptcy court. The second problem with that order is that a family court is a court of limited jurisdiction. They do not have the authority or jurisdiction to decide the judgment creditor. That is entirely the creature of state court. There's no question, and I trust Mr. Edwards will agree with me, the judgment is valid. That order simply said at that juncture, we weren't entitled to a writ of possession. What the court missed in that was that in 2009, Ms. Lessow specifically instructed us to get a writ of possession in our name, or a writ of execution in our name, and to execute on it. She said over and over again, that's your judgment, go collect it. In fact, we did. We collected $4,100. What happened in between those two events is that in June of 2010, she fired us. She determined after she fired us that she didn't want us to have the money. On that motion, which was simply for assignment of rents, had nothing to do with whether we're a judgment creditor or not. On that motion, she changed her position. We've argued that she can't do that under judicial estoppel. The original judgment and the original instructions and authority for us to collect on it are what is valid. Therefore, at that juncture, the court was not going to allow us to do it. Wait a minute. It says, in the fact that Fuchs is not a bona fide judgment creditor, you said it had nothing to do with whether you were a judgment creditor. No. What I said was at that juncture, the court said that because the case was ongoing. The question was, were we going to be entitled to recover those fees at the end of the case or not? As I said, that court, the family court, didn't have authority to determine whether or not we're a judgment creditor. They can go ahead and make the statement, but they're not authorized to do it because family courts don't deal with that. What do we do with the arbitration award? The arbitration award says, you're not entitled to get any for the judgment lien. You're not entitled to get any on the charging lien. You've gotten your money. You can keep your money. She doesn't owe you another dime. Isn't that the right of a client in California to ask for arbitration? Yes, it is. She asked for it, and it was decided. Why shouldn't the arbitration award be enforced? First of all, the judgment lien wasn't at issue in the arbitration. I understand the arbitrator referred to it, but he conflated the two. The charging lien was at issue because the arbitration was solely between my law firm and Ms. Lessow. Lessow claimed that she wanted arbitration of all her fee obligations to you. The judgment lien was security for a fee obligation. If she doesn't owe you any money, you don't have security for anything. The decision of the arbitrator was that she did not have to pay any additional money because she relied on the representation that we were going to collect from her husband. That's all we're trying to do. That judgment was not against her. It was against her husband. She said in arbitration, I'm done paying. They agreed to collect from my husband, and that's what we're trying to do. That's what we've been trying to do since 2009, is collect from her husband. I agree that she's not required to pay any more money. I disagree with the arbitration decision, but it is final, and we understand that. The only parties to that arbitration were Ms. Lessow and my law firm. The arbitrator did not have authority to decide whether or not a judgment against her ex-husband was valid, and that's really the issue here. We think that the issue this court should find that the bankruptcy court got it wrong and the BAP got it wrong when they said that the issue was moot. To the best of my knowledge, there's still about $600,000 of proceeds sitting somewhere in a trust account or escrow, and we believe we're entitled to $375,000 of it because it is Mr. Andrzejewski's share, not the debtor. We're not going after the debtor. We've dropped all efforts to go after the debtor. I think I've got a minute left, so thank you. May it please the Court, Tom Edwards representing the Respondent. Let me just preface this by reminding you that the judgment here shows on its face, or the order here shows on its face, that Fuchs is not the judgment creditor. The award of pendente lite fees was made to basis for Fuchs's claim that it's the judgment creditor is the fact that the money was to be wired to Fuchs's trust account, and of course money in a trust account doesn't belong to the lawyer. It's held in trust. It's not a fee award per se. The pendente lite statute is intended to give the spouse a war chest to use in the litigation to level the playing field. It's justified based on the amount that Fuchs had billed to that point, but the order doesn't determine that those billings were valid. It's simply that the client had been billed a certain amount up to that point and would need additional funds for a later point. It's clearly not an award to Fuchs. It's an award to the client. There wasn't a recognition that Fuchs was entitled to at least $273,000? No, it just recognized that there had been billings up to that point, but it wasn't judging the validity of those billings, and of course the arbitrator later determined that Fuchs was fully paid by the direct payments that it received before the end of the case from Lesseau. But those are sort of two preliminary points here. Which order were you talking about on the face of the order? The fee order that is the purported judgment here. It's a pendente lite award of fees to be paid to Lesseau to be used in the dissolution proceeding to the provider. What's the ER side? Pardon me? What's the ER side? I just want to make sure I'm looking at the right order. It's the October 8, 2009? No, it's the purported judgment itself. The order that we're fighting about here, it's not really a judgment, it's an order for payment of money that became a judgment when it wasn't a fee order. Just give me the ER side. I'm sorry. The document itself is... Is this the one at 278? It's ER 5, pages 1119 to 22. That is the actual purported judgment. This is the October 8, 2009 order signed by Judge Pellman? Yes, that's what we call the purported judgment. Well, that's what I had up. It's called Order After Hearing Granting Patient Payment. Petitioner Elke's, Lesseau's motion? Yes. All right, got it. As you know, the same judge that entered that order shortly after Lesseau fired the Fuchs firm made a determination that Fuchs was not the judgment creditor under that order. Mr. Fuchs says that they were not seeking a determination of their status as a judgment creditor, but the request for an assignment of rents was based on their purported status as a judgment creditor under that order, and the judge ruled against them on that specific basis. He says that the ruling was only at that time, but it's not qualified in any way. The court, the same judge that issued the order, said Fuchs is not a bona fide judgment creditor under this order. They're not entitled to assert any claims based on it. It wasn't based on the status or the stage of the proceeding. It was simply, you're not a judgment creditor, and Fuchs argues that the court lacked jurisdiction to make that finding, but Fuchs was invoking the jurisdiction of the court to make the assignment of rents. The ruling denying the assignment was based on the determination that they weren't the judgment creditor, and that order against them was immediately appealable, and it became final and binding when they failed to appeal from it. So that's the first basis for collateral estoppel and res judicata here, is that state court order. Later, the same ruling was made by the arbitrator in the arbitration between Fuchs and Lasso, and Mr. Fuchs argues that the issue was not before the arbitrator. It certainly was. The existence of that lien was, Fuchs was enforcing a judgment that belonged to Ms. Lasso. She certainly had the right to raise that issue. The arbitrator recognized in his arbitration award that there were two liens before him that he had to determine the validity of. One of them was the charging lien, one of them was the judgment lien, based on this purported judgment. He said at the beginning of the case, the things I'm asking to decide are Fuchs's claims against Lasso and the validity of these two liens. And the arbitration award clearly spells out two different liens. He discusses both of them in some detail. He found both of them invalid based on different reasons. The same argument that Fuchs is making here, he made to the bankruptcy appellate panel. He said the arbitrator didn't decide that on his motion for re-hearing, and they went through the order very carefully and said, you're wrong. Both of these liens were before the arbitrator. He decided both of them, and because that decision is now final, you no longer have standing and any claims that you could make are moot. Every claim that you could make is based on your claim that you have this judgment, and it's been determined now twice that you don't have a judgment. And you can't, you know, it's, you no longer have jurisdiction. So the bankruptcy court relied on the October. Because the arbitration award was not yet final at that point. Okay, but is the bankruptcy court correct in this decision? The bankruptcy court was correct. It was relying on the state court decision, and I think also on the fact that it's not on its face, it can't be construed as an award in favor of Fuchs, just looking at it without any prior rulings. But it did not rely on the arbitration award because that was not yet final. That wasn't measured yet. Pardon me? That wasn't final yet. That wasn't final. Okay. It became final about 10 days after oral argument before the bankruptcy appellate panel, and they asked us to let them know when the Supreme Court denied the petition for review, and we did so. And then because it was now final, they made that the centerpiece of the decision, but they could have reached the same result based on the state court order as well. Now the arbitration, the California Court of Appeal seemed to think that only the $625,000 charging liens were at issue and resolved by the arbitration. In the Court of Appeal decision, the issue was simply, was the arbitration award proper, and there was no particular argument about this lien. That was not sort of raised as a separate issue and not briefed as a separate issue. It was simply that the arbitration award is valid. So they weren't appealing the, you're saying the arbitrators award invalidated the judgment lien, but they weren't concerned about that, so they didn't appeal it? There was no special distinction between the portion of the arbitration award dealing with the purported judgment against Andrzejewski and the portion dealing with the charging lien. They didn't get into those kind of details. What wasn't being raised by Fuchs as a particular detail is simply that the arbitration award as a whole is valid. So when the Court of Appeal was talking about the arbitrator did not exceed his powers, that was just dealing with the charging liens at that point because they've used the $625,000 figure. Yeah, the, that issue was raised, Fuchs was arguing that the arbitrator had rewritten the fee agreement. That's why it doesn't refer to the judgment lien? That's right. It was simply referring to the total amount being claimed by Fuchs, which is $625,000. And where does the, where does the Court of Appeal, does it, it just never addresses the judgment lien because it wasn't that issue in the Court of Appeal? Well, it's just part of the arbitration award. It was no, there was no specific argument that some, that the part of the arbitration award dealing with the purported judgment was invalid, but the rest of it was valid. Fuchs was challenging the whole award and one of the arguments was that the arbitrator had rewritten the agreement and the Court responded to that. That comes up in this brief because one of the arguments that's being made by Fuchs on this appeal is that the arbitrator made a finding supposedly that he could continue pursuing claims against Andrzejewski and the Court of Appeal rejected that argument that there was any such implied finding of a special agreement between Fuchs and Lesseau on that point. So, I guess indirectly, it does, it does deal with the... Well, it says at the beginning, the arbitrator found that Fuchs was not entitled to recover any additional fees beyond those already paid and that its attorney fee lien was invalid. So you're saying that encompasses all of the liens, that issue? The arbitrator, uh, in the findings of the... What the Court of Appeal said at the beginning. I'm sorry, the, that the Court of Appeal said at the beginning of what? Its opinion. Appellant, Fuchs sued his former client and for unpaid attorney fees of $640,000. That's true. Okay. Matter was submitted to binding arbitration. The arbitrator found that Fuchs was not entitled to recover any additional fees beyond those already paid and that its attorney fee lien was invalid. Yes. Is that talking only about the charging liens or... Yes, that's, that sentence is just talking about the charging liens. Okay, so that's what they thought was before them on appeal. Uh, on, the State, the State Court of Appeal. Yes. On, on, the State Court of Appeal found that the arbitrator's award was properly confirmed. And you're saying because it wasn't contested strongly in the... That's right. In the arguments over whether or not... Well, the Court, the judgment lien didn't come up. The distinction between the judgment lien and the, and the, the, the, um, the charging lien did not come up in the State Court of Appeal. There was no particular distinction between the arbitrator's findings on, on those two, two portions. Um, the arguments that, uh, Fuchs, Fuchs did argue that, uh, the arbitrator was wrong because less so was supposedly, uh, stopped. He made, he made some, he made some of the same arguments in the Court of Appeal, uh, briefing that he did here, but there was no particular distinction between the arbitrator's findings on the two liens in the State Court of Appeal. Okay. Thank you, counsel. Thank you. Thank you. Can you clarify what, at least for me, what you thought the Court of Appeal was addressing? It was addressing only the, only the charging lien because an attorney fee lien arises under the fee agreement. Under Setenko and, uh, a host of state court cases, attorneys have an, uh, an unrecorded lien that is created the time the fee agreement is signed against the proceeds recovered by the client. That's called a charging lien. The judgment lien is an entirely separate creature and is a creature of statute. Once a judgment is entered and an abstract of judgment is recorded, that abstract is under 697.310 unless it is withdrawn or satisfied. And that's the argument. The judgment lien didn't come up in the, uh, Court of Appeal because it wasn't an issue. That's a lien, that was a lien against Mr. Andrzejewski and he was not a party. And let me point out under the award on, uh, on the last page of the arbitration award, which is, uh, at, um, uh, ER 4, uh, 908, the award says the lien recorded by Fuchs is invalid and should be expunged. Now, it never was expunged. We withdrew the charging lien, but the judgment lien is still valid. Uh, I, I, my time is up, but I wanted to respond to one error that Mr., uh, Mr. Edwards made and about the original order that was entered on October 8th. And I'm reading from, uh, ER 5 at 1120, where it says in the award that the court awarded, and it says the sum of $300,000 for amounts presently owed to FNAI and the sum of $75,000 for future fees and preparation for trial. So when Mr. Edwards says it was in the trust account and belonged to the client, that's simply incorrect. As your honors are well aware, it is an ethical violation to leave funds in a trust account for fees that are owed, uh, to the, to the lawyer. If they are fees that, that earned fees, they have to come out of the trust account immediately. You can't co-mingle your earned fees with unearned fees. So the only part of that that was unearned as of October was $75,000. We were immediately entitled to $300,000 if the money had been paid. And it was only after Ms. Lesso fired us that she decided we're not entitled to it. As I said, the issue here is who is the proper judgment creditor. That should be sent back to the bankruptcy court and it should be decided under state law. And we've also made the argument that this is, uh, joint tenancy property. These funds are joint tenancy. So you would be satisfied it was an order remanded to the bankruptcy court to make you a judgment creditor against the husband? Yes. Period. Against his share of the proceeds. And you're claiming through community property that that's... Well, under, uh, two, uh, at least two decisions of this court, In re Summers and In re Reed, in the bankruptcy court, the presumption that it's community property doesn't apply. The manner in which you take title applies. They took title as joint tenants. They held title for 18 years as joint tenants. They sold it as joint tenants. And forgive me for the, if it walks like a duck and quacks like a duck. This is joint tenancy property. There's no question about it. The bankruptcy court relied on a statement by the, uh, family court of the presumption of community property, which only applies in the dissolution action. It doesn't apply outside of the dissolution action. And again... Your contention is that the, what's in the trust fund, your attorney trust fund, how much is in that? 675? It's not in mine. I believe it's either in the trustees or in an escrow. But last I knew, $620,000 was in there. Okay. And what's the husband's interest in that? I believe that's all his, his money. So you want to get your judgment lien as against his separate property based on the, on your contention, this joint tenancy, not community property. Correct. It, under, under, uh, 363 H and J, if it's joint tenancy property, it should be immediately distributed to him subject to liens. And our lien is, is, uh, on that, on his share of the proceeds. Okay. Thank you very much. Thank you, counsel. Thank you. The case is submitted.
judges: Fisher, Bybee, Bea